# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68004-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JUDITH MORRIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: April 1, 2013 |

SPEARMAN, A.C.J. — We granted the State's motion for discretionary review of the superior court's decision, on a RALJ appeal, reversing the district court's denial of Judith Morris's motion to suppress evidence. The evidence Morris sought to suppress was found in her possession after a police officer approached her outside a gas station, asked for identifying information, learned she had a warrant, and arrested her. The district court denied the motion, finding that the officer's action in contacting Morris did not constitute a show of force or authority and also finding that the officer had an independent basis for requesting the identification. Because the district court's findings are unchallenged, and thus verities on appeal, and because those findings support the conclusion that Morris was not seized, we reverse the RALJ court.

FACTS

The factual findings of the district court are not in dispute. On October 9, 2008, Deputy J. Ravenscraft[1] was in the parking lot of a gas station when he saw a vehicle pull up to a gas pump and stop. He ran the license plate number and learned that the registered owner had outstanding warrants and a suspended license. The passenger, Judith Morris, got out of the car and entered the convenience store. Ravenscraft contacted the driver and arrested her on the warrants. He then made contact with Morris after she left the store, as she walked toward the car. Ravenscraft asked for her name, date of birth, and the last four digits of her social security number. His tone was conversational and he did not display a weapon. Morris gave him the requested information. Ravenscraft ran the information, discovered Morris had a warrant, and arrested her. A search of Morris incident to her arrest revealed drug paraphernalia.

Morris was charged with possession of drug paraphernalia. She filed a CrRLJ 3.6 motion to suppress evidence obtained from her at the time of her arrest, arguing she had been unlawfully seized when Ravenscraft asked her for identifying information. A suppression hearing, at which only Ravenscraft testified, was held in district court on December 20, 2010.

Ravenscraft testified he had no evidence Morris had committed a crime and Morris had done nothing suspicious. When he approached Morris, he did not

---

[1] The parties refer to Ravenscraft as male. Ravenscraft's full name does not appear in the record.

2

give her any verbal commands such as telling her to stop. He asked her for identifying information because he was attempting to determine if Morris was licensed so that she could move the vehicle and because she was a witness to the crime of driving while license suspended. When asked whether he commanded Morris to remain at the location while he ran her information he replied, "I don't know—I don't know that I ever command anybody but they stand right by and they're not necessarily free to leave because I need to—again for my report to be accurate I need to make sure that I've got the right name in there." Verbatim Report of Proceedings (VRP) at 9. Ravenscraft said it would not have been okay with him if Morris had walked away after he asked her name.

The district court concluded that Morris was not seized and denied her motion to suppress. It found, "In the terms of the manner in which the officer approached . . . I do not find to rise to the level of or even the tone of the officer placed [sic] to show an indication of force under these circumstances." VRP at 25. The district court also noted, in response to Morris's argument that she was an automobile passenger at the time of the contact, that in general there was no obligation for a passenger to provide identification unless the officer had an independent basis for requesting identification. The court concluded that Ravenscraft's reasons for requesting identification were logical and justified under the circumstances.

Morris appealed to the RALJ court, which reversed. The court's written order concluded:

> But for being stopped by the Deputy after exiting the store, Appellant would have entered the vehicle, where she would have enjoyed greater protection than as a pedestrian. Under the circumstances, including the fact that the driver had been placed under arrest, Appellant reasonably believed that she was not free to leave when she was stopped by the Deputy....
>
> [T]he stop was unlawful and the evidence obtained thereafter should have been suppressed.

Clerk's Papers (CP) at 38-39. The State sought discretionary review, which we granted.

## DISCUSSION

Our review of the district court's decision is, like the superior court's review, governed by the standards contained in RALJ 9.1. State v. Ford, 110 Wn.2d 827, 829, 755 P.2d 806 (1988). We review the record before the district court, reviewing factual issues for substantial evidence and legal issues de novo. City of Bellevue v. Jacke, 96 Wn. App. 209, 211, 978 P.2d 1116 (1999). We review de novo conclusions of law following a suppression hearing. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Where no error is assigned to the district court's factual findings, we determine de novo whether those facts constitute a seizure. Id. The defendant bears the burden of proving that a seizure occurred. State v. O'Neill, 148 Wn.2d 564, 574, 62 P.3d 489 (2003).

4

The sole issue is whether the district court's conclusion that Morris was not seized is supported by substantial evidence.[2] Both the federal and state constitutions prohibit unreasonable searches and seizures. United States Constitution, Amend. IV; Washington Constitution, Article I, Section 7. A seizure occurs when "an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004) (citing O'Neill, 148 Wn.2d at 574). The inquiry is whether a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. State v. Thorn, 129 Wn.2d 347, 352, 917 P.2d 108 (1996), overruled on other grounds by O'Neill, 148 Wn.2d at 571. This determination is made objectively by looking at the officer's actions. State v. Young, 135 Wn.2d 498, 501, 957 P.2d 681 (1998). An officer's manner and tone are considerations in determining whether a person would feel free to leave in a particular situation. Thorn, 129 Wn.2d at 353-54; O'Neill, 148 Wn.2d at 579.

Generally, there is no seizure "when a police officer merely asks an individual whether he or she will answer questions or when the officer makes some further request that falls short of immobilizing the individual." State v. Nettles, 70 Wn. App. 706, 710, 855 P.2d 699 (1993). "On the other hand, the

---

[2] The State does not dispute that if Morris was unlawfully seized, the evidence resulting from the search of her person should be suppressed.

threatening presence of several officers, the display of a weapon, touching the defendant, and commanding language or tone of voice" suggest seizure occurred. State v. Knox, 86 Wn. App. 831, 839, 939 P.2d 710 (1997), overruled on other grounds by O'Neill, 148 Wn.2d at 571.

The State contends that, based on the facts as found by the district court, Morris was not seized. We agree. Ravenscraft testified that when he approached Morris, he did not give her any verbal commands. He did not display his weapon, restrain Morris, or, prior to learning of the outstanding warrant, touch her. The district court found that Ravenscraft's manner and tone of voice did not rise to the level of a show of authority or force. Because Morris does not challenge this finding, it is a verity on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). This, along with the evidence that Morris's freedom of movement was not restrained by Ravenscraft, supports the district court's conclusion that on these facts, Morris was not seized.[3]

Because the RALJ court erroneously disregarded these unchallenged findings, we reverse.[4]

---

[3] The RALJ court found that Morris reasonably believed she was not free to leave because the driver had been arrested. Similarly, Morris claims that she faced the "Hobson's choice" of responding to the officer or abandoning her chosen mode of transportation and walking into a foreign and potentially dangerous area. Neither point is supported by the record. There is no evidence that Morris was aware that the driver had been arrested or that the area surrounding the gas station was foreign to her or dangerous.

[4] The RALJ court correctly noted that under Art. I, Section 7 of the Washington State Constitution, a law enforcement officer may not request identification from an automobile passenger for investigative purposes without an independent justification for the request. Rankin, 151 Wn.2d at 699-700. But Morris cites no authority to support the RALJ court's application of Rankin to the circumstances presented here. Although apparently returning to the car when Ravenscraft contacted her, it is undisputed that Morris was walking at the time.

No. 68004-8-I/7

Reversed and remanded.

Spearman, A.C.J.

WE CONCUR:

Schindler, J.

Cox, J.

7