[Nos. 19671-9-II; 19859-2-II.    Division Two.    July 18, 1997.]

THE STATE OF WASHINGTON, *Appellant,* v. GUS D. WALKER, *Respondent.*

THE STATE OF WASHINGTON, *Respondent,* v. ELLEN J. WALKER, *Appellant.*

*H. Steward Menefee, Prosecuting Attorney*, and *James G. Baker, Deputy*, for the State.

*Jack L. Burtch*, for appellant Ellen J. Walker and respondent Gus D. Walker.

ARMSTRONG, J. — Ellen Walker consented to a search of the Walker home after police learned from her young nephew that he had obtained marijuana there. As Ellen and the police were arriving at the home, Gus, Ellen's husband, also arrived. He did not consent to the search before the police entered and found marijuana. The trial court granted Gus's suppression motion, finding that he did not consent to the search. But the court denied Ellen's suppression motion, finding that she voluntarily consented to the search; she appeals her ensuing possession conviction. The principal issue is whether the lack of consent from Gus, an equal cohabitant, vitiates Ellen's consent, making the search illegal as to both Gus and Ellen. The State also appeals, arguing that Gus later consented to the search. We hold that the evidence supports the trial court's finding that Gus did not consent. We also hold that

such lack of consent vitiates Ellen's consent because Gus was a cohabitant possessing equal control who was present and able to object. Thus, the search was invalid as to both Ellen and Gus Walker. Accordingly, we reverse the denial of suppression with respect to Ellen Walker and affirm the suppression with respect to Gus Walker.

## FACTS

A middle-school principal called the police because J.W. ("the child") had brought a bag of marijuana with him to school. The child told Officer Hierholzer that he got the marijuana from his house where he lived with his aunt and uncle, Ellen and Gus Walker. The child also said there was more marijuana at home.

Officer Hierholzer took the child to the police station and Ellen Walker arrived some time later. After some discussion about the marijuana, Ellen signed a written consent-to-search form.

Hierholzer drove to the Walker home in his patrol car with Ellen. Detective Blodgett and another officer, Sergeant Whittaker, followed in a second car. Hierholzer testified that, while driving to the Walker residence, Ellen pointed out her husband Gus, who happened to be driving by. Hierholzer then testified that Gus followed him to the home and arrived at about the same time. Hierholzer also stated that Blodgett and Whittaker were talking to Gus when he and Ellen entered the home.

Once inside, Ellen directed Hierholzer to the bedroom closet, where he seized two bags of marijuana. Blodgett, meanwhile, was outside, explaining to Gus that Ellen had signed a consent-to-search form. Blodgett testified that when he asked Gus if they could go inside, Gus replied, "Yeah, let's go." Gus denied granting permission.

The State charged Ellen and Gus with possession of marijuana. The two defendants moved to suppress the evidence. The trial court suppressed the evidence against Gus and dismissed the information. The State appeals.

The court, however, denied the suppression motion with regard to Ellen and convicted her of marijuana possession. Ellen appeals.

## ANALYSIS

A warrantless search of a residence is per se unreasonable unless the search falls within "a few specifically established and well-delineated exceptions." *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). Consent to a search is one such established exception. *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989).

The State argues that the trial court erred in refusing to suppress the evidence against Gus. The State maintains that Gus arrived after Ellen had provided a valid consent to search the home and that Gus subsequently consented to the search.

In *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), the United States Supreme Court held that the consent of one who possesses common authority over premises is valid against absent, nonconsenting persons with whom that authority is shared. An individual assumes the risk that a cohabitant may permit a search of a commonly shared area in the individual's absence. *Leach*, 113 Wn.2d at 739. In *State v. Mathe*, 102 Wn.2d 537, 688 P.2d 859 (1984), the court expressly adopted the *Matlock* standard for determining consent issues under article 1, section 7 of the Washington Constitution. *Mathe*, 102 Wn.2d at 543.

The *Leach* court then addressed the applicability of *Matlock* to cases where the defendant is present at the time of a search to which a cohabitant has consented. *Leach*, 113 Wn.2d at 740. The court noted that when the police have obtained consent to search from an individual possessing equal control over the premises, the consent remains valid against a cohabitant, who also possesses equal control,

only while the cohabitant is absent. *Leach*, 113 Wn.2d at 744. If the cohabitant is present and able to object, the police must also obtain the cohabitant's consent. *Leach*, 113 Wn.2d at 744. The court noted that any other rule would elevate expediency over an individual's Fourth Amendment rights. *Leach*, 113 Wn.2d at 744.

In *Leach*, the defendant's girl friend consented to a search of the business that she and the defendant operated. *Leach*, 113 Wn.2d at 737. After entering the two-room business office with the woman, the police saw the defendant. *Leach*, 113 Wn.2d at 737. The police did not seek Leach's consent to search, nor did he object to the search. *Leach*, 113 Wn.2d at 738. On appeal, the court ruled the search was invalid because the police should have asked for Leach's consent when they realized he was present. *Leach*, 113 Wn.2d at 744.

Here, Ellen consented to the search at the police station. Because she was a cohabitant of the home, her consent was valid against Gus, an equal cohabitant, only while Gus was absent. *See Leach*, 113 Wn.2d at 739, 744. If Gus were present and able to object, the police had to obtain his consent. *Leach*, 113 Wn.2d at 744. And the absence of an objection by Gus is insufficient to justify the search under *Leach*; the police must affirmatively request Gus's consent when he is present. *Leach*, 113 Wn.2d at 744.

We next determine whether Gus was present when the search started. The trial court found:

> *At the time Ellen Walker and Officer Hierholzer arrived at the defendants' residence, defendant Gus D. Walker arrived in his truck and then got out of it. Officer Hierholzer and Mrs. Walker were already in the door of the residence when Mr. Walker arrived.*

(emphasis added). Ellen and Gus have assigned error to this finding. The court reviews challenged factual findings from a suppression hearing to determine whether they are supported by substantial evidence. *State v. Rakosky,*

79 Wn. App. 229, 236, 901 P.2d 364 (1995). Substantial evidence exists where there is sufficient evidence to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Sergeant Whittaker testified that Ellen either was already in the home or was just entering the home when Gus arrived. He, therefore, was equivocal whether Ellen had already entered the home when Gus arrived in his truck. All the other witnesses, however, testified that Ellen and Hierholzer had not yet entered the home when Gus arrived. Hierholzer testified that Gus followed him to the home, arrived at about the same time, and that Blodgett was talking to Gus when he and Ellen entered the home. Blodgett testified that Gus arrived as the officers were pulling into the driveway, and that Hierholzer and Ellen went into the home while he was talking to Gus. Ellen testified that Gus pulled into the driveway as she was getting out of the patrol car. Gus testified that he pulled into the driveway right behind Hierholzer and his wife. Accordingly, substantial evidence does not support a finding that Ellen and Hierholzer were already *inside the home* when Gus arrived.

Instead, the testimony shows that Gus arrived while Ellen and Hierholzer were either approaching the door or were at the doorway. Gus, therefore, had arrived and was present before Hierholzer entered into the home. Furthermore, Officer Hierholzer knew that Gus was immediately behind him as he drove to the Walker residence and approached the home.

Gus was also able to object — he had seen his wife in the patrol car, followed the car to his home, and was not given an opportunity to talk to Ellen before she and Hierholzer entered the home. Because Gus was present and able to object, the police had to obtain his consent prior to searching the home. *Leach*, 113 Wn.2d at 744.

But the State argues that Gus consented to the search by failing to object after Blodgett explained that his wife had consented to the search. Although the trial court

noted that Blodgett explained that the police were going to search the home, and that Gus responded, "Let's go," the trial court found that Blodgett did not specifically ask for permission to search. And the court found that Gus's response did not demonstrate his consent. The State does not challenge these findings of fact and, therefore, they are verities on appeal. *Hill*, 123 Wn.2d at 644.

The State has the burden of proving that consent was voluntarily given by clear and convincing evidence. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990). The failure of the officers to ask specifically for permission to search the home does not satisfy this burden and, therefore, the trial court's conclusion that Gus did not consent is supported by the findings.

Ellen then argues that, because the police failed to obtain consent from Gus, the entire search is illegal. She maintains that, although she consented to the search, the trial court erred in failing to suppress the drug evidence against her because Gus did not consent.

In general, Fourth Amendment rights, including the right against unreasonable search and seizures, are personal rights that may not be vicariously asserted. *State v. Goucher*, 124 Wn.2d 778, 786, 881 P.2d 210 (1994). These rights may be enforced "only at the instance of one whose own protection was infringed by the search and seizure." *State v. Simpson*, 95 Wn.2d 170, 174, 622 P.2d 1199 (1980) (quoting *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)). A defendant may challenge a search or seizure only if he or she has a personal Fourth Amendment privacy interest in the area searched or the property seized. *Goucher*, 124 Wn.2d at 786. Without such a showing, a criminal defendant cannot benefit from the exclusionary rule's protections because one cannot invoke the Fourth Amendment rights of others. *State v. Jones*, 68 Wn. App. 843, 847, 845 P.2d 1358 (1993).

As the *Leach* court noted, however, the consent of one person does not eliminate the need for the consent of other persons who are present, able to object, and possess equal rights to the premises. *Leach*, 113 Wn.2d at 742.

When two or more persons have equal use of a place in which both are present, the consent of one does not normally eliminate the need for the consent of the other(s) before a search is made; ordinarily, persons with equal "rights" in a place would accommodate each other by not admitting persons over another's objection while he was present.

*Leach*, 113 Wn.2d at 742 (quoting Lloyd L. Weinreb, *Generalities of the Fourth Amendment*, 42 U. CHI. L. REV. 47, 63 (1974-75)); *see also* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.3(d), at 730-31 (3d ed. 1996). As both Ellen and Gus were present, the police were required to gain consent from both Ellen and Gus. *Leach*, 113 Wn.2d at 742.

Ellen clearly had a privacy interest in the home she shared with Gus. *State v. Young*, 123 Wn.2d 173, 189, 867 P.2d 593 (1994). Although Ellen consented and thus waived her privacy interest, such a waiver was contingent upon a corresponding waiver by Gus, her cohabitant possessing equal rights, once he was present. This is so because the requirement that consent be gained from all present co-occupants is predicated on the idea that one co-occupant would defer to the wishes of another who refuses consent.[1]

Because we presume Ellen would defer to Gus's lack of consent, it follows that Ellen is entitled to know whether or not Gus would consent. If he does not, Ellen is then able to revoke her consent, and the police may not search their home without a warrant. LAFAVE, § 8.1 (c), at 631-32 (consent may be withdrawn at any time prior to completion of the search); *see also State v. Thorkelson*, 25 Wn. App. 615, 618, 611 P.2d 1278 (1980) (officers relying on consent as basis to conduct warrantless search only have authority that has been granted to them by the consent). But the failure to ask Gus for permission to search the home deprived Ellen of the opportunity to know if he would consent and, if he did not, to revoke her own.

---

[1]*See Leach*, 113 Wn.2d at 742 (ordinarily, persons with equal "rights" in a place accommodate each other by not admitting persons over another's objections while the other person is present).

Just as Gus could have challenged the voluntariness of Ellen's consent even if he had not been present,[2] so too Ellen can challenge the lack of consent by Gus once he was present. Thus, because Gus did not consent to the search, the trial court erred in denying the suppression of the evidence against Ellen.

Reversed and remanded.

HOUGHTON, C.J., and SEINFELD, J., concur.

Review granted at 134 Wn.2d 1006 (1998).

---

[2]*See e.g., State v. Cotten,* 75 Wn. App. 669, 679, 879 P.2d 971 (1994), *review denied,* 126 Wn.2d 1004 (1995).